U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

AUG -6 2012

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SIMMONS, MORRIS & CARROLL, LLC | CIVIL ACTION NO: 12-464 |
| VERSUS | JUDGE DONALD E. WALTER |
| CAPITAL ONE, N.A. and TONYA LAMBERT | MAG. JUDGE MARK L. HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Remand [Doc. #10], filed by the plaintiff, Simmons, Morris & Carroll, L.L.C. ("Plaintiff"). Defendants, Capital One, N.A. ("the bank") and Tonya Lambert (collectively "Defendants"), oppose this motion [Docs. #15]. For the reasons stated herein, the plaintiff's Motion to Remand [Doc. #10] is **GRANTED.**

## BACKGROUND

Plaintiff originally filed suit in the First Judicial District Court in Caddo Parish, Louisiana on February 2, 2012.[1] Plaintiff is a Louisiana Limited Liability Company whose business is the practice of law.[2] Plaintiff's petition alleges that, for a lengthy period prior to January 20, 2012, Plaintiff held two accounts with the bank for the primary purpose of depositing Plaintiff's funds, depositing funds for Plaintiff's legal clients, storing funds and paying funds to third parties on behalf of Plaintiff and its legal clients.[3] One of the two accounts maintained by Plaintiff at the bank was a

---

[1] Doc. #1-1.

[2] Doc. #1-1, ¶ 1.

[3] Doc. #1-1, ¶ 3.

1

trust account, held for the benefit of Plaintiff's legal clients.[4] Plaintiff alleges that the trust account was designated, both orally and in writing, as an "Interest on Lawyer's Trust Account" ("IOLTA"), and the bank was aware at all times relevant to this litigation that the trust account was held for the benefit of, and as a depositary for, Plaintiff's legal clients.[5]

Plaintiff alleges that, for many years, up to and through January 25, 2012, Plaintiff routinely deposited settlement funds into, and authorized the payment of funds out of, the trust account.[6] The Louisiana State Bar requires that such settlement funds be fully deposited into the trust account before an attorney may withdraw funds from the trust account in favor of a particular client. Plaintiff claims that one of its agents would usually communicate directly with the bank, either in person or via telephone, to inquire whether specific deposited checks had "cleared," as legally required by the Louisiana State Bar.[7] Plaintiff alleges that the inquiry always revolved around whether specific checks had deposited and fully "cleared," rather than a general inquiry into the sufficiency of funds available for the particular withdrawal.[8]

On January 20, 2012, Plaintiff alleges that an employee of Plaintiff deposited two checks into Plaintiff's trust account by presenting the checks at the drive-through window of the bank's Line Avenue location.[9] One check was for $350,000 and was from the Bank of Nova Scotia; the other check was for $5,000. In return for the deposits, the bank's teller provided a receipt for the two

---

[4] Doc. #1-1, ¶ 4.

[5] Doc. #1-1, ¶¶ 5-6.

[6] Doc. #1-1, ¶ 7.

[7] Doc. #1-1, ¶ 8.

[8] Doc. #1-1, ¶ 9.

[9] Doc. #1-1, ¶ 10.

deposits totaling $355,000.[10] On January 24, 2012, Plaintiff's manager telephoned the bank and left a voicemail message at the Travis Street location, regarding Plaintiff's intent to perform a wire transfer.[11] On January 25, 2012, Tonya Lambert, a customer service representative and employee of the bank acting within the course and scope of her employment therewith, contacted Plaintiff's manager for written authorization for the wire transfer.[12] Lambert further notified Plaintiff's manager that, once the wire transfer was authorized in writing, a person with signature authority on the trust account would need to verbally verify the wire transfer.[13]

Thereafter, Plaintiff alleges that its manager placed another phone call to Lambert, inquiring as to whether the specific $350,000 check, mentioned above from Bank of Nova Scotia, had fully cleared because the wire transfer depended on those specific funds being available.[14] Plaintiff claims that Lambert responded affirmatively that the $350,000 check had been deposited, the specific funds were present in the trust account, and they were available for a wire transfer in the amount of $349,175.[15] Plaintiff alleges that Lambert's affirmation to Plaintiff's manager was unconditional.[16] Subsequent to Lambert's affirmation to Plaintiff's manager, Plaintiff alleges that another of its senior attorneys spoke to Lambert on the phone and inquired into the availability of the specific $350,000

---

[10] Doc. #1-1, ¶ 11.

[11] Doc. #1-1, ¶ 12.

[12] Doc. #1-1, ¶¶ 13, 20.

[13] *Id.*

[14] Doc. #1-1, ¶ 14.

[15] Doc. #1-1, ¶ 15.

[16] Doc. #1-1, ¶ 16.

worth of funds.[17] Plaintiff alleges that its senior attorney again received unconditional affirmation that the specific funds were present and consequently approved the wire transfer from the trust account.[18]

On the morning of January 26, 2012, after verifying that the necessary funds were not available, Plaintiff's manager and two senior attorneys, met with Lambert at the bank's main branch in an attempt to stop the wire transfer.[19] When Plaintiff asked Lambert whether her computer had reflected, on January 25, 2012, that the check had cleared as Lambert had indicated, Lambert allegedly replied to Plaintiff's three agents that "[i]t was in the balance."[20] Plaintiff alleges that Lambert also stated, in front of Plaintiff's three agents, "[w]ell, I guess that's all my fault because I didn't go through the transactions and see."[21] Plaintiff also claims that Lambert admitted to Plaintiff's three agents that she should have responded to Plaintiff's inquiry with "I don't know," instead of unconditionally verifying that the check had cleared.[22]

Plaintiff further alleges that a "deposit correction" was delivered to Plaintiff from the bank in the afternoon of January 26, 2012, notifying Plaintiff that its $350,000 deposit made on January 20, 2012 had been reversed and removed from the trust account on the same day it was deposited.[23]

---

[17] Doc. #1-1, ¶ 17.

[18] Doc. #1-1, ¶ 18.

[19] Doc. #1-1, ¶ 27.

[20] Doc. #1-1, ¶ 28.

[21] Doc. #1-1, ¶ 29.

[22] Doc. #1-1, ¶ 30-31.

[23] Doc. #1-1, ¶ 21.

The letter was allegedly dated January 20, 2012 and postmarked January 24, 2012.[24] Upon receipt of the letter, Plaintiff claims that its manager spoke in person with the bank's branch manager Laura Wilson, who admitted that the $350,000 check had not "cleared" in any way.[25] Allegedly, Wilson informed Plaintiff's manager that the bank's normal procedure for non-domestic checks was to "place a six-week hold," and the teller who handled the deposit should have notified Plaintiff of that policy on January 20, 2012.[26] Plaintiff further alleges that Wilson admitted that, when asked on January 25, 2012, Lambert should have recognized and informed Plaintiff that the $350,000 deposit had been corrected and sent to collections on January 20, 2012.[27] Plaintiff claims that it was not until later that the bank informed Plaintiff that the $350,000 check was fraudulent.[28]

Plaintiff alleges that it relied on Defendants' unconditional assertions that the relevant check had "cleared," when it authorized the wire transfer of $349,175 from Plaintiff's trust account.[29] However, in conducting the wire transfer, the bank debited Plaintiff's operating account in the amount of $350,000.[30] Plaintiff alleges that its contract with the bank demands a duty of ordinary care from agents of the bank. Plaintiff contends that the bank's contractual provisions relative to "General Deposit Availability" include the following language: "If you have questions, contact a banking officer[;]" and "Please ask a relationship banker if you are unsure about when funds from

---

[24] Doc. #1-1, ¶ 22.

[25] Doc. #1-1, ¶ 23.

[26] Doc. #1-1, ¶ 24.

[27] Doc. #1-1, ¶ 26.

[28] Doc. #1-1, ¶ 32.

[29] Doc. #1-1, ¶¶ 33-34.

[30] Doc. #1-1, ¶ 35.

a deposit will be available."[31] Plaintiff contends that the contract further states: "If we are not going to make all of the funds from your deposit available on the first business day, we will notify you at the time you make your deposit[;]" and "We will also tell you when the funds will be available."[32]

Plaintiff claims to have acted in accordance with those contractual provisions by contacting an agent regarding the availability of deposited funds. Plaintiff argues that it was not informed that the deposit funds would not be available the following business day, and the bank's agent failed to exercise reasonable or ordinary care in representing that the relevant funds had cleared.[33] Plaintiff alleges that it relied upon the negligent misrepresentations of the bank's agent, Lambert, resulting in an immediate loss of $349,175.[34] Plaintiff believes that this loss of operating capital will result in further loss due to an inability to proceed with the normal course of business and further that its growth will be reduced and potential profits not realized.[35] Plaintiff alleges that Lambert acted in bad faith by refusing to perform her contractual obligations, based on Lambert's admitted failure to review the transactions necessary to assess the availability of deposit funds.[36] Plaintiff further alleges that the bank, through its agent, acted in bad faith.[37]

As Plaintiff's motion to remand points out, the face of the pleadings reveal that a Louisiana Limited Liability Company, with all members being citizens of Louisiana, has alleged fault against

---

[31] Doc. #1-1, ¶ 36.

[32] Doc. #1-1, ¶ 37.

[33] Doc. #1-1, ¶ 38.

[34] *Id.*

[35] Doc. #1-1, ¶ 39.

[36] Doc. #1-1, ¶ 40.

[37] *Id.*

Tonya Lambert, a Louisiana citizen.[38] Tonya Lambert is an employee of Defendant Capital One, N.A., which is a Virginia corporation.[39] Plaintiff alleges that Lambert was properly made a party defendant on the basis that Lambert personally misrepresented information to Plaintiff, which was relied upon by Plaintiff to its detriment.[40] The Defendants allege that Lambert was improperly joined, as Plaintiff has no viable or potential cause of action against Lambert.[41] Because the parties dispute neither the amount in controversy nor that Lambert is a Louisiana citizen, the only question before the Court is whether Lambert has been improperly joined for the purpose of destroying diversity jurisdiction.

## LAW AND ANALYSIS

Under 28 U.S.C. § 1441(a), any state court civil action over which the federal courts would have original jurisdiction may be removed from state to federal court. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). When original federal jurisdiction is based on diversity, however, a defendant may not remove "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* (quoting 28 U.S.C. § 1441(b)(2)). Pursuant to 28 U.S.C. § 1447(c), a district court is mandated to remand a case if, at any time before final judgment, it appears the court lacks subject matter jurisdiction.

This Court has original jurisdiction in all civil actions where the matter in controversy

---

[38] Doc. #10, ¶ 2; Doc. #15.

[39] Doc. #10, ¶ 2; Doc. #1, ¶ 6.

[40] Doc. #10, ¶¶ 2-3.

[41] Doc. #15.

exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). Since the enactment of the diversity statute, courts have interpreted the diversity statute to require "complete diversity" of citizenship. *Carden v. Arkoma Associates,* 494 U.S. 185, 187 (1990). The parties do not dispute that Tonya Lambert is a citizen of Louisiana; therefore, her existence in this suit destroys complete diversity unless she was added in violation of the prohibition against improper joinder. *See Smallwood v. Illinois Cent. R.R.,* 385 F.3d 568, 571 n. 1 (5th Cir. 2004) (The Fifth Circuit has adopted the term "improper joinder" as being more consistent with the statutory language than the term "fraudulent joinder," although there is no substantive difference between the two terms).

Improper joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Griggs v. State Farm Lloyds,* 181 F.3d 694, 698 (5th Cir.1999). Our inquiry focuses on the second test. In assessing the possibility of improper joinder, the Court may "pierce the pleadings" and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Travis v. Irby,* 326 F.3d 644, 648-49 (5th Cir. 2003) (citing *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990) and *Griggs v. State Farm Lloyds,* 181 F.3d 694, 699-702 (5th Cir.1999)). Any contested issues of fact and any ambiguities of state law must be resolved in favor of Plaintiff. *See id.* The burden of persuasion on the defendant claiming improper joinder is a heavy one. *See id.* (citing *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981)).

The Fifth Circuit has explained, in *Travis v. Irby,* that the test for improper joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an

in-state defendant. *See Smallwood, supra*, 385 F.3d at 573 (citing 326 F.3d at 648). Stated differently, this means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. *Id.* "This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)). A district court may choose one of two ways by which to predict whether a plaintiff has a reasonable basis of recovery under state law. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573. Ordinarily, if the plaintiff survives this analysis, there is no improper joinder. *Id.* However, in some instances, the plaintiff may misstate or omit discrete facts, which allows the district court the discretion to pierce the pleadings and make a summary inquiry. *See id.* Deciding which procedural method to use lies within the court's discretion; however, a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. *Id.* at 573-74.

Here, Plaintiff claims that there are two potential causes of action available to Plaintiff, upon which Tonya Lambert may be subject to personal liability: negligent misrepresentation and detrimental reliance.[42] Louisiana recognizes an action for negligent misrepresentation arising under Louisiana Civil Code articles 2315 and 2316. The broad language of those two tort articles "affords protection for persons damaged by the negligent acts of others sufficient to encompass a cause of action for negligent misrepresentation." *In re Succession of McKnight*, 33,802 (La. App. 2d Cir.

---

[42] Doc. #10-1, p. 5; Doc. #1-1, ¶¶ 40-41.

10/4/00); 768 So. 2d 794, 798 (citing *Daye v. General Motors Corp., et al.*, 97-1653 (La. 9/9/98); 720 So.2d 654 and *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007 (La.1993)). However, Plaintiff has sued Lambert as an agent of the bank and does not allege that Lambert was acting outside of the course and scope of her employment at the bank. Under Louisiana law, "[o]fficers, employees and agents owe no duties to third parties, and cannot be found liable to third parties for their negligent acts and omissions in a commercial context[.]" *Korson v. Independence Mall I, Ltd.*, 595 So. 2d 1174, 1178 (La. App. 5th Cir. 1992); *See also Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 215 (5th Cir. 1986). Thus, if a duty was owed, it was owed by the bank rather than an individual agent acting within the scope of her employment. *See In re Succession of McKnight, supra.*

Insofar as Plaintiff seeks to rely on *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973) to establish personal liability of Tonya Lambert, that reliance is misplaced. The Fifth Circuit "has held that *Canter* liability to third persons for the negligence of corporate officers and employees may only be imposed for bodily injury claims." *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009) (citing *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986)). Because the only injury alleged in Plaintiff's petition is one for economic loss, Plaintiff cannot recover against Lambert for negligent misrepresentation, under the Fifth Circuit's interpretation of *Canter*. *Id.*; *see also Hibernia Cmty. Dev. Corp., Inc. v. U.S.E. Cmty. Servs. Group, Inc.*, 166 F.Supp.2d 511, 515 (E.D. La. 2001) (*Canter* "applies only to bodily injury claims and does not apply to claims arising in a commercial setting[]").[43]

---

[43] Based on the Fifth Circuit's interpretation of *Canter*, Plaintiff cannot succeed on a negligent misrepresentation claim against Lambert, despite the fact that "Louisiana is a jurisdiction which allows recovery in tort for purely economic loss caused by negligent misrepresentation[.]" *See Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007 (La. 1993). A case-by-case duty/risk analysis is the appropriate standard in Louisiana for determining legal responsibility for negligent misrepresentations. *Id.* (citing *Harris v. Pizza Hut of Louisiana, Inc.*,

We now turn to the question of whether Plaintiff has stated a cause of action against Tonya Lambert for detrimental reliance. The doctrine of detrimental reliance is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Suire v. Lafayette City-Parish Consol. Gov't*, 2004-1459 (La. 4/12/05); 907 So. 2d 37, 59 (internal citation omitted). Louisiana Civil Code article 1967 provides, in pertinent part:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

"In order to recover for detrimental reliance[,] the plaintiff must prove that the defendant made a representation by conduct or word, that the reliance on the representation was justified, that the defendant knew or should have known that plaintiff would rely on the representation, and that the plaintiff changed his position to his detriment because of his reliance on the representation." *Stokes v. Georgia-Pac. Corp.*, 894 F.2d 764, 768 (5th Cir. 1990) (citing *Breaux v. Schlumberger Offshore Services*, 817 F.2d 1226, 1230–31 (5th Cir.1987)). "Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract." *Suire*, 907 So.2d at 59.

Plaintiff has made specific allegations against both Tonya Lambert and the bank for the roles that each of the Defendants played in causing Plaintiff's claimed economic losses. In viewing, as we must, the facts alleged in the light most favorable to Plaintiff, this Court must conclude that there are sufficient facts to support a cause of action against Lambert for detrimental reliance. According

---

455 So.2d 1364 (La.1984)). And, as noted above, Louisiana law does not impose a duty on agents in a commercial context. *See Korson, supra.*

to Plaintiff's allegations, its contract with the bank ensures that the bank will notify Plaintiff of the availability of deposit funds. It is further alleged that the contract suggests that all customer inquiries should be directed at one of the bank's relationship bankers, such as Lambert. In accordance with these provisions, Plaintiff alleges that it contacted Lambert and relied upon her "unconditional assertions," later claimed by both Wilson and Lambert to be false, that the relevant funds were available. In doing so, Plaintiff claims to have suffered an immediate economic loss of $350,000 and claims future economic losses as well. Although Louisiana law makes clear that employees in this kind of commercial setting do not owe a personal duty to third parties in the absence of fraud, Plaintiff has just as clearly stated sufficient facts to support a cause of action for detrimental reliance against Tonya Lambert.

## CONCLUSION

For the reasons stated herein, it is the finding of the Court that Tonya Lambert was properly named as a Defendant in this case. As Lambert's presence destroys the requirement of complete diversity, this Court no longer has subject matter jurisdiction over the instant case. Accordingly, Plaintiff's Motion to Remand [Doc. #10] is hereby **GRANTED**. This case is hereby **REMANDED** to the First Judicial District Court in Caddo Parish, Louisiana.

**THUS DONE AND SIGNED**, this 6th day of August, 2012.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE